IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BANKRUPTCY TRADING & INVESTMENTS, L.L.C., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-06-0620 |
| CHIRON FINANCIAL GROUP, INC., | § § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Bankruptcy Trading & Investments, L.L.C. ("BTI"), brought this action against defendant, Chiron Financial Group, Inc. ("Chiron"), for breach of fiduciary duty and professional malpractice arising out of a business relationship between the parties, the purpose of which was to take control of a debtor in bankruptcy. BTI originally brought its action in the 269th District Court of Harris County, Texas (Plaintiff's Original Petition, Docket Entry No. 9). Defendants removed the case to federal court pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 1452 (Notice of Removal, Docket Entry No. 1).

Pending before the court are BTI's Combined Motion to (I) Remand Lawsuit to Harris County District Court and (II) for Abstention Pursuant to 28 U.S.C. §§ 1334 and 1452 and (III) for Recovery of Fees and Costs Under 28 U.S.C. § 1447(C) (Docket Entry No. 10) ("BTI's Combined Motion") and Chiron's Amended Motion to

Transfer Venue (Docket Entry No. 16).  For the reasons explained below BTI's Combined Motion will be granted in part and denied in part, and Chiron's Amended Motion to Transfer Venue will be denied.

## I.  Factual and Procedural Background

In April of 2003 Chiron was retained by the Official Committee of Unsecured Creditors (the "Official Committee") in the Chapter 11 bankruptcy of Barnett Marine, Inc. ("Barnett Marine").[1]  Chiron is a financial advisory firm and was engaged to provide financial advisory services for the Official Committee in connection with Barnett Marine's indebtedness restructuring and the development of a Chapter 11 plan of reorganization.   Chiron represented the Official Committee from April of 2003 until November of 2003.

In late October of 2003 Chiron began working with BTI and its representatives regarding a plan to take control of Barnett Marine.[2]  BTI was a start-up bankruptcy investing firm whose two principals, Kirk Kennedy and Charles Carr, were attorneys at Jackson Walker L.L.P. ("Jackson Walker").[3]  Jay Krasoff, a senior managing director of Chiron, approached BTI about assigning to BTI Chiron's claims for professional fees earned as an advisor to the Official Committee.  This would give BTI creditor standing in the

---

[1]Unless otherwise noted, the facts alleged are derived from BTI's Original Petition, Docket Entry No. 9.

[2]Chiron states that negotiations between BTI and Chiron began in early November, not October, of 2003.  Opposition of Chiron to Combined Motion to Remand, ¶ A.1, Docket Entry No. 17.

[3]Id. at ¶¶ A.1-A.2.

Barnett Marine bankruptcy case.  Chiron and BTI reached an agreement whereby Chiron assigned its right to professional fees to BTI.  In exchange BTI would allow Chiron a portion of the "equity upside" if BTI's bankruptcy plan was confirmed.  Under the agreement Chiron would provide the financial advisory services and expertise necessary for BTI to confirm its plan.  BTI's two attorney principals would provide legal services.[4]  The goal of the parties was to take control of the Debtor, Barnett Marine.[5]

On November 3, 2003, Chiron resigned from representing the Official Committee and began openly representing BTI and the Ad Hoc Committee of Creditors of Barnett Marine (the "Ad Hoc Committee") as financial advisors.  From November 3, 2003, through April 1, 2004, Chiron provided financial services, and BTI's principals, through Jackson Walker, provided legal services.  BTI and Chiron were not successful in taking control of Barnett Marine, however, and on or about April 1, 2004, Chiron and BTI met to discuss the future of their agreement.[6]  At that meeting Charles Carr announced that he was terminating the agreement and withdrawing his capital from BTI.[7]  Without Carr's capital the parties did not have

---

[4] Id. at ¶ A.2.

[5] Id.

[6] Id. at ¶ A.4.  (Although the date in paragraph A.4 is 2005, this is obviously an error.)

[7] Id.

-3-

sufficient capital to confirm and fund a plan of reorganization for
Barnett Marine, as originally proposed.[8]

On April 7, 2004, a Settlement Term Sheet was entered into by
Chiron, BTI, Barnett Marine, and various other interested parties.[9]
The Settlement Term Sheet resolved objections to Barnett Marine's
Plan and set out rights and obligations among the parties relative
to Barnett Marine's bankruptcy.[10]  The Bankruptcy Court incorporated
the Settlement Term Sheet into the Debtor's Fourth Amended and
Restated Plan of Reorganization as an Immaterial Modification.[11]
Barnett Marine's Plan was confirmed on April 16, 2004.[12]

On January 18, 2006, BTI filed suit against Chiron in Texas
state court.  BTI alleges that Chiron breached its fiduciary duty
and committed professional malpractice by initiating, without BTI's
knowledge or consent, secret settlement negotiations with Barnett
Marine on the eve of the confirmation hearing scheduled for
April 7, 2004.  (Docket Entry No. 9)  Chiron timely removed the
action to this court on February 24, 2006.  (Docket Entry No. 1)

---

[8]Id. at ¶ A.5.  In addition, Chiron claims that the original
plan was not feasible because it provided no return to equity and
was thus opposed by the Debtor's equity interest.  Id.

[9]Settlement Term Sheet, Exhibit A to Opposition of Chiron to
Combined Motion to Remand, Docket Entry No. 17.

[10]Id.

[11]Memorandum to Record, April 7, 2004, Exhibit B to Opposition
of Chiron to Combined Motion to Remand, Docket Entry No. 17.

[12]Opposition of Chiron to Combined Motion to Remand, ¶ A.9,
Docket Entry No. 17.

-4-

## II.  <u>Standard of Review</u>

District courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11 [of the bankruptcy code], or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  If the district court has jurisdiction of a claim or cause of action under 28 U.S.C. § 1334, a party can remove the claim or cause of action to the district court where such civil action is pending.  28 U.S.C. § 1452(a).

"Related to" bankruptcy proceedings include (1) causes of action owned by the debtor that become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties that have an effect on the bankruptcy estate.  <u>Arnold v. Garlock, Inc.</u>, 278 F.3d 426, 434 (5th Cir. 2001) (citing <u>Celotex Corp. v. Edwards</u>, 115 S.Ct. 1493, 1499 n.5 (1995)).

A "related" matter is one in which "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." <u>In re Wood</u>, 825 F.2d 90, 93 (5th Cir. 1987) (quoting <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984, 994 (3d Cir. 1984)).  Certainty, or even the likelihood, of such an effect on the bankruptcy estate is not required.  <u>Arnold</u>, 278 F.3d at 434 (citing <u>In re Canion</u>, 196 F.3d 579, 585 (5th Cir. 1999)).  "[A]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively), and which in any way impacts the handling and administration of the bankruptcy estate."  <u>In re</u>

-5-

<u>Majestic Energy Corp.</u>, 835 F.2d 87, 90 (5th Cir. 1988) (quoting <u>Pacor</u>, 743 F.2d at 994).

A confirmed plan narrows 28 U.S.C. § 1334 jurisdiction. Once a debtor's bankruptcy reorganization plan has been confirmed, bankruptcy jurisdiction under 28 U.S.C. § 1334 ceases to exist except for matters pertaining to the implementation or execution of the plan. <u>In re Craig's Stores of Texas, Inc.</u>, 266 F.3d 388, 390 (5th Cir. 2001). <u>See also</u> <u>In re U.S. Brass Corp.</u>, 301 F.3d 296, 304-05 (5th Cir. 2001). Subject matter jurisdiction is tested at the time the case is removed to federal court. <u>Arnold</u>, 278 F.3d at 434.

While 28 U.S.C. § 1452(a) allows removal to federal court if bankruptcy jurisdiction exists, 18 U.S.C. § 1452(b) establishes the means for remand of the case to state court. Section 1452(b) provides that the court may remand a case removed under § 1452(a) "on any equitable ground," and the "order entered under this subsection remanding a claim or cause of action, or a decision not to remand, is not reviewable by appeal or otherwise by the court of appeals." 28 U.S.C. § 1452(b).

### III.  <u>Motion to Remand</u>

BTI moves to remand this action to state court, arguing that the court has no jurisdiction. BTI also argues that the court should abstain from hearing the case, on both mandatory and equitable grounds.

**A.    28 U.S.C. § 1334 Jurisdiction**

BTI has sued Chiron for breach of fiduciary duty and professional negligence. Chiron argues that this suit is "related to" Barnett Marine's bankruptcy proceedings because BTI's suit seeks to enforce rights that are specifically controlled by the Settlement Term Sheet that the Bankruptcy Court incorporated into Barnett Marine's Confirmed Plan of Reorganization.[13]

Both Chiron and BTI base their arguments on the "related to" jurisdiction test. Use of the "related to" test for 28 U.S.C. § 1334 jurisdiction is not appropriate, however, because Barnett Marine's bankruptcy reorganization plan has been confirmed.[14]

The Fifth Circuit has rejected the "expansive view" of the "related to" test for post-confirmation disputes in favor "of a more exacting theory[.]" U.S. Brass, 301 F.3d at 300 (quoting Craig's Stores, 266 F.3d at 390-91). In post-confirmation disputes bankruptcy jurisdiction ceases to exist except for matters pertaining to the implementation or execution of the plan. Craig's Stores, 266 F.3d at 390. The Fifth Circuit refined this test in U.S. Brass, 301 F.3d at 296.

In U.S. Brass the debtor's plan provided that certain claims against the Chapter 11 debtor would be resolved in a court of

---

[13]Memorandum to Record, April 7, 2004, Exhibit B to Opposition of Chiron to Combined Motion to Remand, Docket Entry No. 17.

[14]The Bankruptcy Court entered an order confirming the Debtor's Chapter 11 Reorganization Plan in the Barnett Marine bankruptcy on April 16, 2004. In re Barnett Marine, Case No. 03-10308 (Bankr. E.D. La. April 16, 2004).

competent jurisdiction and determined by settlement agreement.  Id. at 299.  The debtor requested post-confirmation bankruptcy court approval of a proposed agreement to liquidate claims through binding arbitration.  Id.  The Fifth Circuit held that the test in Craig's Stores was satisfied and that the Bankruptcy Court had jurisdiction over the dispute because "[b]ankruptcy law will ultimately determine this dispute, and the outcome could affect the parties' post-confirmation rights and responsibilities. Furthermore, the proceeding will certainly impact compliance with or completion of the reorganization plan."  Id. at 305.

In this case Chiron argues that BTI's suit is a challenge to the validity and extent of the Settlement Term Sheet, and the suit threatens to involve the Debtor and third parties in protracted litigation.  According to Chiron, the Settlement Term Sheet entered into by Chiron, BTI, the Debtor, and other interested parties "resolved and settled through compromise the objections to the Debtor's Plan and settled through compromise several distinct disputes as among the parties thereto, including without limitation the claims and defenses between BTI and Chiron arising out of the Joint Venture."[15]

To bolster its argument that BTI's state law claims implicate the Settlement Term Sheet, Chiron asserts that the Barnett Marine

---

[15]Notice of Removal, p. 5, Docket Entry No. 1.  Chiron's pleadings call the business relationship between BTI and Chiron "the Joint Venture."

bankruptcy is ongoing and that BTI has submitted several post-confirmation motions to the Bankruptcy Court. The docket sheet in the Barnett Marine bankruptcy reveals that although the Barnett Marine Plan has been confirmed, litigation in the case has continued and BTI has been an active participant in that litigation. BTI has filed various motions with the bankruptcy court seeking payment of claims and attorneys' fees.[16] The Bankruptcy Court granted in part and denied in part one of BTI's motions on March 16, 2006.[17] On March 27, 2006, BTI filed a motion to reconsider,[18] which the Bankruptcy Court denied on May 23, 2006.[19] BTI is appealing two orders of the Bankruptcy Court.[20]

This court has reviewed the relevant pleadings and orders in the Barnett Marine bankruptcy and observes that while some reference the Settlement Term Sheet, they do not reference any potential state law causes of action between BTI and Chiron. Nor

---

[16]See, e.g., BTI's Motion for an Order (I) Compelling the Reorganized Debtor to Pay Unsecured Claims and Comply with Confirmed Chapter 11 Plan and Settlement Agreement and (II) Requiring Payment of Attorneys' Fees on Allowed Claims, In re Barnett Marine, Case No. 03-10308 (Bankr. E.D. La. Feb. 12, 2005).

[17]In re Barnett Marine, Case No. 03-10308, (Bankr. E.D. La. March 16, 2006).

[18]BTI's Motion for Reconsideration, In re Barnett Marine, Case No. 03-10308 (Bankr. E.D. La. March 27, 2006).

[19]In re Barnett Marine, Case No. 03-10308 (Bankr. E.D. La. May 23, 2006).

[20]BTI's Notice of Appeal, In re Barnett Marine, Case No. 03-10308 (Bankr. E.D. La. June 5, 2006).

does Chiron cite the court to any pleadings or orders in the Barnett Marine bankruptcy that contain such a reference. Although Chiron has demonstrated that litigation continues in the Barnett Marine bankruptcy, it has not explained how the litigation in this case would affect the post-confirmation litigation.

To answer this question the court looks to the Settlement Term Sheet. The provisions that mention BTI or Chiron state:

> 5. The Debtor, OUCC [Official Unsecured Creditors Committee] and the Whitney Bank agree that BTI shall be allowed a substantial contribution claim under section 504 of the Bankruptcy Code. The claim to be allowed for BTI pursuant to the substantial contribution claim shall be $75,000.

> 6. All professional fee and employment objections shall be withdrawn and final approved administrative fee applications and engagements to employ shall be presented to the Court for approval as currently filed or in the following agreed amounts: approximately $78,500 for Chiron Financial Group, Inc. All administrative claims for professionals shall be paid pro rata and pari passu over the course of the liquidation of the Debtor's assets.

> . . .

> 8. BTI shall withdraw all current motions and objections and shall agree to the current asset sale proposed by the Debtor.

> 9. Neither BTI, the Committee nor Chiron will object to the third party release granted to Whitney Bank under section 5.6 of the Debtor['s] Plan. <u>Releases shall be given under the</u> Debtor's Plan to Chiron.

> 10. <u>Releases shall be given under the</u> Debtor's Plan to Chiron. Releases shall be given to the Unsecured Creditors Committee and its members under the Debtor's Plan. BTI will release the Unsecured Creditors Committee and its members.

11.  Any monetary sanctions imposed against BTI or its
principals shall [be] rescinded pursuant to an motion to
vacate order granting sanctions to be filed by BTI.

12.  The unsecured claims of BTI and Labor Ready in the
amount voted in favor of the Ad Hoc Plan shall be allowed
unsecured claims pursuant [to] section 502(a) of the
Bankruptcy Code.[21]

Despite Chiron's argument, BTI's claims in the present case do
not appear to be governed by the Settlement Term Sheet.  In fact,
the Settlement Term Sheet, while resolving issues between the
parties and the Debtor, does not appear to resolve all issues
between the parties themselves.  The document does not mention
disputes between BTI and Chiron, much less address extra-
contractual claims such as breach of fiduciary duty or professional
malpractice.  It is not apparent from reading the Settlement Term
Sheet that it has any application to this dispute.  Moreover,
Chiron fails to explain what portions of the Settlement Term Sheet
are relevant to BTI's claims and why.  The court concludes that the
Settlement Term Sheet does not govern the disputes between Chiron
and BTI in this action.

In its argument for jurisdiction, Chiron cites In re
Hillsborough Holdings Corp., 197 B.R. 366 (Bankr. M.D. Fla. 1996),
as an analogous case.  Hillsborough involved a post-confirmation
dispute between two non-debtors regarding a settlement agreement.
Id. at 367-69.  Hillsborough is inapposite to the case at hand for

---

[21]Settlement Term Sheet, Exhibit A to Opposition of Chiron to
Combined Motion to Remand, Docket Entry No. 17.

several reasons.  First, the suit in <u>Hillsborough</u> was for breach of the settlement agreement contract.  <u>Id.</u> at 368.  BTI's suit sounds in tort and does not on its face involve the Settlement Term Sheet. Second, the <u>Hillsborough</u> settlement was "at the heart and core of the reorganization" of the Debtors and was "an indispensable, vital and inseparable element of their Chapter 11 case."  <u>Id.</u> at 370. Although arguably important to Barnett Marine's bankruptcy, Chiron has not alleged that the Settlement Term Sheet was at the heart of Barnett Marine's bankruptcy plan.  Finally, the <u>Hillsborough</u> decision was decided by a bankruptcy court in the Tenth Circuit, which uses "related to" jurisprudence to analyze post-confirmation jurisdiction rather than the Fifth Circuit's narrower test.  <u>See Craig's Stores</u>, 366 F.3d at 390 (noting that the Tenth Circuit uses the "related to" test on post-confirmation disputes and adopting a narrower test); <u>In re C F & I Fabricators of Utah, Inc.</u>, 150 F.3d 1233, 1237 (10th Cir. 1998).

Chiron anchors its assertion of jurisdiction on the Settlement Term Sheet and the threat of involving the Debtor, Barnett Marine, and third parties in protracted litigation pertaining to its terms and provisions.  When the confirmed plan governs the dispute, as in <u>U.S. Brass</u>, this argument can serve as a basis for 28 U.S.C. § 1334 bankruptcy jurisdiction.  <u>U.S. Brass</u>, 301 F.3d at 305.  But in this case the Settlement Term Sheet as incorporated into the confirmed plan does not govern the dispute, and thus does not provide a basis for jurisdiction.  Furthermore, BTI's suit against Chiron, while based on alleged conduct that took place during the Bennett Marine

-12-

bankruptcy, seeks only monetary damages.  BTI does not seek to set aside the Settlement Term Sheet or question the validity of the confirmed plan.

Because Chiron has failed to establish how the dispute between BTI and Chiron would impact the implementation or execution of Barnett Marine's plan, the court concludes that it does not have jurisdiction under 28 U.S.C. § 1334.

## B.   All Writs Act

Chiron also argues that federal jurisdiction exists under the All Writs Act, 28 U.S.C. § 1651.  This argument is foreclosed by the Supreme Court decision in Syngenta Crop Protection, Inc. v. Henson, 123 S.Ct. 366, 369-70 (2002).  In Syngenta the Court held that the All Writs Act does not provide an independent jurisdictional basis for removal.  Id.  See also Morris v. T E Marine Corp., 344 F.3d 439, 443 (5th Cir. 2003).  Accord Renteria-Gonzales v. I.N.S., 322 F.3d 804, 811 (5th Cir. 2002) ("[T]he All Writs Act does not confer an independent basis for subject matter jurisdiction.").

## C.   Other Motions

Because the court has concluded that it does not have jurisdiction, it is unnecessary to consider BTI's arguments regarding mandatory and equitable abstention.  Chiron's Amended Motion to Transfer Venue (Docket Entry No. 16) will be denied as moot.

-13-

## IV.  <u>Recovery of Fees and Costs</u>

BTI has moved to recover its fees and costs under 28 U.S.C. 1447(c).  Section 1447(c) provides that an "order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  <u>Id.</u> While "[a]n award of costs has never been predicated on a finding of bad faith or negligent or frivolous removal," <u>Miranti v. Lee</u>, 3 F.3d 925, 929 (5th Cir. 1993), the imposition of costs, including attorneys' fees, is usually reserved for actions removed in bad faith or where the lack of a legally cognizable basis for removal was obvious from the face of the pleadings themselves even if removal itself was effected in good faith.  <u>See</u> <u>News-Texan, Inc. v. City of Garland, Tex.</u>, 814 F.2d 216, 220-21 & n.10 (5th Cir. 1987) (holding award of fees and costs is proper when non-removability is obvious even though removal was effected in good faith); <u>Miranti</u>, 3 F.3d at 928 (emphasizing role of removal's propriety in determining whether to impose fees).  The question the court considers in determining whether to award costs and expenses under § 1447(c) is "whether the defendant had objectively reasonable grounds to believe the removal was legally proper." <u>Valdes v. Wal-Mart Stores, Inc.</u>, 199 F.3d 290, 292 (5th Cir. 2000).

Although the Supreme Court's opinion in <u>Syngenta</u>, 123 S.Ct. at 369-70, forecloses any reasonable argument for removal on the basis of the All Writs Act, whether Chiron's grounds for removal based on 28 U.S.C. §§ 1334 and 1452 were objectively reasonable is a closer

question.    However, because BTI submitted no evidence of its
attorneys' fees or expenses, the court need not consider this issue
and will not award attorneys' fees or costs to plaintiff.

### V.    Conclusions and Order

For the reasons explained above the court concludes that it
does not have jurisdiction over this case.  The court therefore
**ORDERS** that

1.    Chiron's Amended Motion to Transfer Venue (Docket Entry
No. 16) is **DENIED as moot.**

2.    BTI's Combined Motion to (I) Remand Lawsuit to
Harris County District Court and (II) for Abstention Pursuant to 28
U.S.C. §§ 1334 and 1452 and (III) for Recovery of Fees and Costs
Under 28 U.S.C. § 1447(c) (Docket Entry No. 10) is **GRANTED** as to
the Motion to Remand and **DENIED** as to the Motion for Recovery of
Fees and Costs.    This action is **REMANDED** to the 269th Judicial
District Court of Harris County, Texas.  The clerk will promptly
deliver a copy of this Memorandum Opinion and Order to the District
Clerk of Harris County, Texas.

**SIGNED** at Houston, Texas, on this the 7th day of June, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-15-